Nos. 09-10172 and 09-10179

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee,

v.

**ALLEN HARROD,**

**MICHAEL LABRECQUE**,

Defendants-Appellants.

On Appeal From The United States District Court
For The Eastern District of California

Honorable William B. Shubb
United States District Judge

D.C. No. 03-CR-00384-WBS

---

# JOINT REPLY BRIEF
# OF APPELLANTS

---

JOHN P. BALAZS
Attorney At Law
916 2nd Street, Suite F
Sacramento, California 95814
Telephone: (916) 447-9299
John@Balazslaw.com

Attorney for Defendant-Appellant
ALLEN HARROD

DANIEL J. BRODERICK
Federal Defender
CAROLYN M. WIGGIN
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Defendant-Appellant
MICHAEL LABRECQUE

# <u>TABLE OF CONTENTS</u>

I.      Introduction.......................................................................  1

II.     The Evidence Was Insufficient to Sustain the Convictions on
        Counts Two and Three Because the Government Failed to
        Prove That, When Irene Harrod Took Sexually Explicit
        Photographs of J. Harrod, the Harrods Had Transferred
        Custody or Control of J. Harrod or That Michael LeBrecque
        Had Obtained Custody or Control of J. Harrod..........................  2

III.    The Evidence Was Insufficient to Sustain the Convictions
        on Counts Two and Three Because There Was No Evidence
        That Sexually Explicit Photographs Were Taken of J. Harrod
        "As a Consequence of" Any Transfer of Custody or Control......  6

IV.     There Was Insufficient Evidence That Before J. Harrod
        Arrived in Texas in 1991, Michael LaBrecque Intended That
        J. Harrod Engage in Criminal Sexual Activity While in Texas....  8

V.      The District Court Erred in Imposing $25,000 Fines on Mr.
        Harrod and Mr. LaBrecque............................................................  11

VI.    Conclusion...........................................................................................  16

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES:</u>

*Abrahim & Sons Enters. V. Equilon Enters., LLC,* 292 F.3d 958
　　　(9th Cir. 2002)......................................................................... 3

*United States v. Andrews,* 75 F.3d 552 (9th Cir. 1996)................................ 11

*United States v. Bass,* 404 U.S. 336 (1971).................................................. 3

*United States v. Bauer,* 129 F.3d 962 (7th Cir. 1997).................................. 15

*United States v. Broxmeyer,* 616 F.3d 120 (2d Cir. 2010)........................... 8

*United States v. Buculei,* 262 F.3d 322 (4th Cir. 2001)................................ 2-5

*United States v. Cabaccang,* 332 F.3d 622, *clarified,* 341 F.3d 905
　　　(9th Cir. 2003 ......................................................................... 7

*United States v. Frank,* 599 F.3d 1221 (11th Cir.), *cert denied,* 131 S. Ct.
　　　186 (2010)............................................................................... 2

*United States v. Harrell*, 530 F.3d 1051 (9th Cir. 2008)............................ 3

*United States v. Hyppolite,* 65 F.3d 1151 (4th Cir. 1995)........................... 16

*United States v. Kinslow,* 860 F.2d 963 (9th Cir. 1988)............................... 8

*United States v. Nevils,* 598 F.3d 1158 (9th Cir. 2010) .............................. 5, 8

*United States v. Orlando,* 553 F.3d 1235 (9th Cir.), *cert denied,*
　　　129 S.Ct. 2748 (2009)........................................................... 12

*United States v. Seale,* 20 F.3d 1279 (3d Cir. 1994).................................... 15

*United States v. Tocco,* 135 F.3d 116 (2d Cir. 1998)................................... 15

*United States v. Yeje-Cabrera,* 430 F.3d 1 (1st Cir. 2005).......................... 15

## OTHER AUTHORITIES:

18 U.S.C. § 2251(a)................................................................................... 3,4

18 U.S.C. § 2251(b)................................................................................... 4

18 U.S.C. § 2251A.................................................................................... Passim

18 U.S.C. § 2423(a)................................................................................... 8, 11

18 U.S.C. § 3553....................................................................................... 12

18 U.S.C. § 3572....................................................................................... 12

18 U.S.C. § 3572(a)(1).............................................................................. 12

18 U.S.C. § 3572(a)(2).............................................................................. 12

18 U.S.C. § 3572(b)................................................................................... 12

U.S.S.G. § 5E1.2....................................................................................... 12, 13

U.S.S.G. § 5E1.2(d)(2).............................................................................. 12

U.S.S.G. § 5E1.2(d)(3).............................................................................. 12

U.S.S.G.§ 5E1.2(d)(4).............................................................................. 12

U.S.S.G. § 5E1.2(d)(6).............................................................................. 12

Nos. 09-10172 and 09-10179

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. Cr. 2:03-cr-00384-WBS |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | JOINT REPLY BRIEF OF APPELLANTS |
| ALLEN HARROD, and MICHAEL LABRECQUE, | ) ) ) | |
| Defendants-Appellants. | ) ) | |

## I. Introduction

Defendant Allen Harrod challenges the sufficiency of the evidence against him on count two while defendant Michael LaBrecque raises similar challenges on counts one and three. Emphasizing the horrific nature of the crimes and the need to interpret federal sex offense statutes broadly, the government attempts to fit a square peg (the facts) into a round hole (the law). Despite the government's lengthy recitation of the facts, the bottom line is that the defendants are entitled to a judgment of acquittal on counts two and three because the evidence was insufficient to show that Allen and Irene Harrod *transferred custody or control* over their son J. Harrod to the LaBrecques or that Michael LaBrecque *obtained custody or control* over J. Harrod, when Irene Harrod took the sexually explicit photos of him. Furthermore, Mr. LaBrecque is not guilty of count one because there is no evidence that he knew that J. Harrod would be involved in sexual conduct when J.Harrod and his mother went to Texas. Regardless of the outcome of their appeals, the defendants have been convicted of terrible crimes and will

spend the rest of their lives in prison since both have been sentenced to life imprisonment in state court and face long federal sentences on other counts that are not challenged on appeal. Nonetheless, they are entitled to judgments of acquittal on the crimes they did not commit. Finally, the Court should strike the $25,000 fines imposed on Mr. Harrod and Mr. LaBrecque because their CJA financial affidavits demonstrated they were unable to pay a fine and their life sentences mean they never will.

## II. The Evidence Was Insufficient to Sustain the Convictions on Counts Two and Three Because the Government Failed to Prove That, When Irene Harrod Took Sexually Explicit Photographs of J. Harrod, the Harrods Had Transferred Custody or Control of J. Harrod or That Michael LaBrecque Had Obtained Custody or Control of J. Harrod.

The government starts by knocking down arguments that Mr. Harrod and Mr. LaBrecque didn't make. They have not argued that 18 U.S.C. § 2251A "applie[s] only under circumstances in which child pornography is the sole purpose of custodial transfer." *Answering Brief*, p. 25. Rather, they contend that a conviction under section 2251A requires the "transfer of custody or control" of a minor from a parent, guardian, or other person with custody or control of the minor and that at least *one of the purposes* of such transfer be to produce child pornography. Neither requirement is met here.

Similarly, Mr. Harrod and Mr. LaBrecque don't quarrel with the proposition that "custody or control" does not require the transfer of "legal custody" and includes "temporary supervision over or responsibility for a minor legally or illegally obtained." *United States v. Buculei*, 262 F.3d 322, 331-35 (4th Cir. 2001) (quoting 18 U.S.C. § 2256(7)); *United States v. Frank*, 599 F.3d 1221, 1236 (11th Cir.) ("neither custody nor control require ownership of the minor or any other permanent relationship"), *cert. denied*, 131 S. Ct. 186 (2010). But to be a

2

"transfer," there must be an actual shift of authority over the child from the parent or guardian to another person for an offense to fall within the ambit of the statute. *See Abrahim & Sons Enters. v. Equilon Enters.*, *LLC*, 292 F.3d 958, 963 (9th Cir. 2002) ("Webster's Dictionary defines 'transfer' as 'to convey or make over the possession or legal title of (e.g., property) to another.'").  That is the fatal flaw here.

The government also emphasizes that "[s]ection 2251A was enacted as part of a comprehensive scheme created by Congress to eradicate the sexual exploitation of children and eliminate child pornography, and therefore warrants a broad sweep." *Answering Brief*, p. 28.  There is no doubt that section 2251A is part of a series of statutes designed to reduce child pornography.  It does not follow, however, that 2251A should be an exception to the fundamental principle that criminal statutes are to be construed narrowly in favor of the defendant.  *See, e.g., United States v. Bass*, 404 U.S. 336 (1971); *United States v. Harrell*, 530 F.3d 1051, 1058 n.3 (9th Cir. 2008) ("Because we are construing a criminal statute, we also apply the rule of lenity, which favors a narrow construction of ambiguous terms.").  Congress enacted other laws to protect against the harms of child pornography (and the defendants were convicted under different statutes).  It is thus unnecessary to stretch the language of section 2251A beyond the plain meaning of "transfers custody or control" to punish those involved with child pornography.

As the court explained in *Buculei*, there are two primary statutes dealing with the use of minors in the production of child pornography.  "The baseline offense is section 2251(a), which prohibits the 'employment, use[], persuasion, inducement, enticement, or coercion of a minor for the purpose of producing child

pornography." 262 F.3d at 334 (Michael, J, concurring in part and dissenting in part). Section 2251(b) likewise prohibits a "parent, legal guardian, or person having custody or control of a minor" from "knowingly permit[ting] such minor to engage in, or assist any other person to engage in" the production of child pornography. 18 U.S.C. § 2251(b). The statute at issue here, section 2251A, deals with more serious conduct and, as a result, carries substantially higher penalties. *Compare* 18 U.S.C. § 2251(a) & (b) (at time of offense, penalty range of 10-20 years imprisonment, absent special circumstances) *with* 18 U.S.C. § 2251A(a) & (b) (20 years to life imprisonment).[1] Section 2251A(a) prohibits a parent, guardian, or other person with "custody or control" of a minor from selling or otherwise transferring custody or control of such minor for the purpose of producing child pornography; section 2251A(b) likewise prohibits any person from buying or obtaining "custody or control" of a minor to produce child pornography. Because section 2251A must mean more than section 2251(a) to avoid making 2251A redundant, "custody or control" must be interpreted as requiring more than "employment, use, persuasion, inducement, enticement, or coercion." Similarly, for the enhanced penalties in section 2251A to apply, a parent, legal guardian, or person with custody or control of a minor must do more than permit the minor to engage in the production of child pornography, which is barred under section 2251(b).

This case is a far cry from the facts in *Buculei*, in which the Fourth Circuit upheld, 2-1, the defendant's conviction for violating section 2251A(b). In *Buculei*,

---

[1] The penalty ranges were increased effective April 30, 2003 so that the base statutory sentencing range for conviction of 18 U.S.C. § 2251(a) or (b) is now 15 to 30 years imprisonment while the statutory sentencing range for a § 2251A(a) or (b) conviction is now 30 years to life imprisonment.

the defendant convinced a 13-year old girl to sneak out of her house at night and go with him to a motel. In his motel room, the defendant gave the girl a drink and videotaped their sexual activity. The court rejected his argument that the statute "does not extend to those situations where a stranger gains 'control' of a minor without any sort of parental consent or knowledge." 262 F.3d at 332. Given that the girl was alone with the defendant in his hotel room, the court held that his conduct was covered by the plain meaning of the term "control" in section 2251A.[2] In this case, on the other hand, J. Harrod's mother remained with him and in fact directed and photographed the sexual activity that forms the basis of the charges in counts two and three. The Harrods simply had not *transferred custody or control* over J. Harrod to Mr. LaBrecque at the time the sexually explicit images were taken. *See United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc) ("Although *Jackson [v. Virginia]* requires the reviewing court initially to construe all evidence in the favor of the government, the evidence so construed may still be so supportive of innocence that no rational juror could conclude that the government proved its case beyond a reasonable doubt.").

Attempting to avoid reversal, the government refers to facts that while J. Harrod and his mother stayed in Texas, Juliette LaBrecque home-schooled and

---

[2]     The dissent in *Buculei* would have overturned the defendant's conviction under 2251A on the ground that the "'custody or control' requirement of § 2251A means that "a defendant must exert a significant degree of authority over the minor," and that the evidence was insufficient to support a finding of such custody or control. 262 F.3d at 333-34 (Michael, J., concurring in part and dissenting in part). Under either the majority's or dissent's interpretation of section 2251A, the evidence is insufficient to find that the Harrods had transferred custody or control of J. Harrod to Michael LaBrecque (and that he obtained custody or control of J. Harrod) when Irene Harrod took the sexually explicit photos of J. Harrod.

cooked for J. Harrod and Michael LaBrecque took J. Harrod on errands, taught him about their religion and how to use the computer and play computer games. *Answering Brief*, pp. 31-35. But it downplays the undisputed facts that show that the Harrods never "transferred custody or control" of their son while he and his mother lived together with the LaBrecques in Texas for about a month. While she resided with J. Harrod in Texas, Irene Harrod continued to take care of, and maintain responsibility over, her son. She bought him shoes when he needed them, ER Vol.2, pp. 274-75, RT, pp. 2317-18, she fixed his meals, ER Vol.2, p. 306, RT, p. 2355, she disciplined him, ER Vol. 2, p. 274, RT, p. 2317, and generally "took charge of him" as his mother. ER Vol. 2, pp. 274, 306, RT, pp. 2317, 2355. While Juliette LaBrecque taught J. Harrod at home, Irene Harrod observed the home-schooling. ER Vol.2, p. 306, RT, p. 2355. The Harrods did not transfer custody or control over J. Harrod simply because they allowed Juliette LaBrecque to home-school him or permitted Michael LaBrecque to teach J. Harrod to play computer games or go on errands with him. If he wanted to *transfer* custody or control over J. Harrod to the LaBrecques during the photo shoot, Allen Harrod would not have had his wife stay with their son and the LaBrecques.

**III.    The Evidence Was Insufficient to Sustain the Convictions on Counts Two and Three Because There Was No Evidence That Sexually Explicit Photographs Were Taken of J. Harrod "As a Consequence of" Any Transfer of Custody or Control.**

Assuming arguendo that the Harrods had transferred custody or control of J. Harrod to Mr. LaBrecque when the sexually explicit photographs of J. Harrod with Juliette LaBrecque were taken, there was no evidence that such transfer was causally related to Irene Harrod's ordering her son to pose for the sexually explicit photographs. The government appears to reject defendants' position that the phrase "as a consequence of" in section 2251A requires a causal connection

6

between the transfer of custody or control of the child and the production of child pornography. Instead, it proposes a test that "the production of child pornography must have been the result, effect or outcome of the transfer of control or custody." *Answering Brief*, p. 38. To the extent that the government proposes a broader standard than the defense, the Court should reject its interpretation of "as a consequence of" under the rule of lenity. *See United States v. Cabaccang*, 332 F.3d 622, 634, *clarified*, 341 F.3d 905 (9th Cir. 2003) (en banc).

With respect to Mr. Harrod, the government refers to testimony that, before his wife and son left for Texas, Mr. Harrod told his wife to take the sexually explicit photographs of their son and Juliette LaBrecque as a precaution so that the LaBrecques would never report Mr. Harrod to authorities. But this misses the point. Even if the Harrods could be said to have given custody or control of J. Harrod to the LaBrecques, there was no causal relationship between the transfer of custody or control and the taking of the sexually explicit photos. The only evidence at trial was that Irene Harrod directed and took the photos herself using her authority as J. Harrod's mother to order him to participate in the pornographic photo shoot. It was absolutely irrelevant to the production of this child pornography whether the Harrods retained custody and control of their son or had given custody or control over him to the LaBrecques.

Finally, Mr. LaBrecque's conviction on count three cannot be sustained because, even assuming he obtained control over J. Harrod at the time of the photo shoot, there was insufficient evidence that he knew at the time he took control over J. Harrod, that one consequence would be that sexually explicit photos would be taken of J. Harrod. The government relies on "circumstantial" evidence that Mr. LaBrecque had long been a follower of Allen Harrod's religion, had engaged in sex

7

acts with *his daughters,* and had taken and sent nude photographs of them to Mr. Harrod. But there was no evidence that Mr. LaBrecque knew that Mr. Harrod's *son* would be expected to participate in any sex acts while being home schooled at the LaBrecques' home. *See Section IV*, *infra*, pp. 8-10. Indeed, the government's concedes the absence of any "direct evidence of Michael LaBrecque's knowledge and intent." *Answering Brief*, p. 41. It's claim, however, that circumstantial evidence demonstrated his intent is just thinly disguised speculation that is wholly insufficient as proof beyond a reasonable doubt. *Nevils*, 598 F.3d at 1167 ("evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case").

**IV.** **There Was Insufficient Evidence That Before J. Harrod Arrived in Texas in 1991, Michael LaBrecque Intended That J. Harrod Engage in Criminal Sexual Activity While in Texas.**

In order to convict Mr. LaBrecque of violating 18 U.S.C. § 2423(a), the government had to prove beyond a reasonable doubt that Mr. LaBrecque knew that a dominant purpose of J. Harrod's travel to Texas was to engage in illegal sexual activity. *United States v. Kinslow*, 860 F.2d 963, 967-68 (9th Cir. 1988). Moreover, the government had to prove beyond a reasonable doubt that Mr. LaBrecque knew of this purpose before the interstate travel was complete, that is by the time J. Harrod arrived in Texas. *See United States v. Broxmeyer*, 616 F.3d 120, 129 (2d Cir. 2010) (plain wording of 18 U.S.C. § 2423(a) requires that the *mens rea* of intent coincide with the *actus reus* of crossing state lines.).

The government acknowledges that there is no direct evidence that, prior to the time J. Harrod actually arrived in Texas, Michael LaBrecque had any idea that J. Harrod would engage in unlawful sexual activity while in Texas. *Answering Brief*, p. 43 ("[w]hile there may not have been direct evidence Labrecque knew

8

of the sexual purpose of J. Harrod's travel to Texas . . .").  Faced with the lack of this evidence, the government contends that there was enough circumstantial evidence that Mr. LaBrecque knew of a plan to have J. Harrod engage in sexual activity in Texas to support Mr. LaBrecque's conviction on count one.  As discussed below, however, none of the evidence the government describes in its brief tends to show that *before* J. Harrod arrived in Texas in 1991, Michael LaBrecque knew that one of the purposes of J. Harrod's travel to Texas was to have him engage in illegal sexual activity.

The government points to evidence showing that by July of 1991, Mr. Harrod and Mr. LaBrecque communicated frequently, and that Mr. LaBrecque helped to plan J. Harrod's trip to Texas.  *Answering Brief*, p. 43.  The government points out that, as Mr. LaBrecque conceded in the Opening Brief, by July of 1991 Mr. LaBrecque was attempting to follow the religion that Mr. Harrod invented and gradually revealed to Mr. LaBrecque.  *Answering Brief*, p. 43; *Opening Brief*, p. 31.  The evidence showed that by July of 1991, Mr. LaBrecque knew that the religion involved sexual activity between adults, and, taken in the light most favorable to the government, could have known about the "presentation" ritual in which underage girls were sexually abused.  *Opening Brief*, p. 32.  The evidence could have also supported a finding that prior to J. Harrod's 1991 trip to Texas, Mr. LaBrecque had started to have some sexual contact with his own underage daughters.  *Opening Brief*, pp. 32-33.  However, there was no evidence that before J. Harrod arrived in Texas, Michael LaBrecque believed that J. Harrod– a young boy who would not have been subject to the religion's "presentation" rituals, which themselves were explicitly tied to girls and menarche– was being sent to Texas for the purpose of engaging in unlawful sexual activity.

Much of the evidence the government points to goes to what Michael LaBrecque said and did *after* J. Harrod arrived in Texas. *See Answering Brief,* p. 44 (Michael LaBrecque's actions and comments regarding the photo shoot that occurred approximately two weeks after J. Harrod arrived in Texas; "Adam and Eve" days that began to occur a year or more after J. Harrod arrived in Texas); p. 45 (Michael LaBrecque instructing J. Harrod to engage in sexual activity well after he arrived in Texas). Mr. LaBrecque does not dispute that the evidence, largely supplied by government witness Irene Harrod, supports a finding that *after* Irene Harrod arrived in Texas with J. Harrod, she instructed both of the LaBrecques about the religion's tenets regarding sexual contact with children. ER Vol. 2, pp. 297-98, RT, pp. 2340-41. As the government's brief points out, *after* Irene Harrod arrived with J. Harrod in Texas in 1991, it was Irene Harrod who taught the LaBrecques how to perform the "Day of Drunkenness," a ritual involving sexual contact with the LaBrecques' underage daughters. *Answering Brief*, p. 14. The evidence as a whole suggests that Michael LaBrecque initially believed that J. Harrod was being sent to Texas to be raised in the LaBrecque household and home-schooled by Juliette LaBrecque. Only after J. Harrod arrived in Texas, Michael LaBrecque gradually learned that the religion involved J. Harrod's participation in sexual activity.

Mr. LaBrecque does not dispute that the government offered evidence that during the years J. Harrod was raised in the LaBrecque home, he was sexually abused as part of the perverse religion the Harrod and LaBrecque adults practiced. This evidence may well have been sufficient to prove violations of federal or state laws that prosecutors did not charge. However, count one of the indictment at issue in this appeal charged Mr. LaBrecque with a very specific crime: aiding and

10

abetting in the transportation of J. Harrod from California to Texas in July of 1991 with the intent that he engage in unlawful sexual activity. 18 U.S.C. § 2423(a). The case law makes clear that to be guilty of this offense, Mr. LaBrecque had to have formed the intent by the time J. Harrod's trip from California to Texas was complete. The government did not present direct or circumstantial evidence that Mr. LaBrecque knew, before J. Harrod actually arrived in Texas, of any plan that J. Harrod be involved in sexual activity while in Texas. Evidence of Mr. LaBrecque's knowledge about the religion's practices involving adults and girls may have fed *speculation* that Mr. LaBrecque knew that J. Harrod would be sexually abused in Texas is not enough to support the conviction. *See United States v. Andrews*, 75 F.3d 552, 556 (9th Cir. 1996) (while circumstantial evidence can be used to prove any fact, mere suspicion or speculation will not provide sufficient evidence) (internal quotations and citations omitted). In light of the insufficient evidence of intent, the count one conviction of Mr. LaBrecque cannot stand.

## V.    The District Court Erred in Imposing $25,000 Fines on Mr. Harrod and Mr. LaBrecque.

In its Answering Brief, the government notes that during Mr. Harrod's sentencing hearing, the district court stated that in imposing the sentences it would generally rely on the evidence presented at trial and the sentencing hearing, and to some extent on information contained in the advisory Presentence Investigation Report. *Answering Brief*, pp. 55-56. According to the government, this statement by the court "indicates that the district court considered the factors when deciding whether to impose fines and in what amounts." *Answering Brief*, p. 56.

There is nothing about the district court's statement regarding the universe of information it would consider that indicates the district court fulfilled its duty to

analyze that information in light of the factors listed in 18 U.S.C. §§ 3553, 3572 and U.S.S.G. § 5E1.2 in deciding whether to impose a fine and the amount of the fine. The district court might have pored through every page of the record, but that would not be the equivalent of considering whether, in light of the information in that record, the defendants' income, earning capacity, and financial resources made it possible for them to pay a fine (18 U.S.C. § 3572(a)(1) and U.S.S.G. § 5E1.2(d)(2)); what burden a fine would place on the defendants' dependents (18 U.S.C. § 3572(a)(2) and U.S.S.G. § 5E1.2(d)(3)); whether imposition of a fine would impair the defendants' ability to pay restitution in their state cases (18 U.S.C. § 3572(b) and U.S.S.G. § 5E1.2(d)(4)); whether the defendants previously had been fined for a similar offense (U.S.S.G. § 5E1.2(d)(6)), and other factors set forth in the sentencing Guidelines and statutes. The district court's failure to consider the relevant factors and provide an explanation of why, in light of those factors, it was imposing the fines itself makes imposition of the fines procedurally unreasonable. *See United States v. Orlando*, 553 F.3d 1235, 1239 (9th Cir.) (*citing United States v. Carty*, 520 F.3d 984, 992 (9th Cir.2008) (*en banc*)), *cert. denied*, 129 S.Ct. 2748 (2009).

    With no evidence that the district court examined the § 3553, § 3572, and § 5E1.2(d) factors, the government–which professed ignorance of Mr. Harrod's and Mr. LaBrecque's financial status at the sentencing hearing–tries to persuade this Court that the fines were warranted. The government criticizes the Financial Affidavits both defendants filed on the ground that they contained immaterial errors such as listing the wrong statutory charges or failing to name each dependent individually. *Answering Brief*, pp. 52, 55. What the government ignores is that the district court found these affidavits sufficient to establish the defendants' indigence

12

and qualification for appointed counsel. Application Note 3 to U.S.S.G. § 5E1.2 specifies that "the fact that a defendant is represented by (or was determined eligible for) assigned counsel are significant indicators of present inability to pay any fine." The district court dismissed these indicators, reasoning, without any basis, that the Federal Defender's office and CJA counsel would and could represent anyone who asked without a judicial finding that they qualified for appointed counsel. The Guideline makes clear that it is the fact that the court found a person qualifies for appointed counsel that indicates a person is unable to pay a fine.

The government next argues that the district court did not err in failing to consider the impact of a fine on the defendants' dependents because the government believes, based on materials that were not presented to the district court, that *currently* the defendants do not have dependents. *Answering Brief*, pp. 56-57. The government's argument misses the point: the impact of the large fines on Harrod's and LaBrecque's dependents was never even considered. Had the court considered this factor it could have looked at matters such as child support owed by both men under the various state systems in which their children were involved and whether their dependents had a greater chance of collecting money from restitution ordered in the California cases if the federal fine did not impede the ability of the defendants to make their California restitution payments. The government's extra-record representations about the current living situations of Mr. Harrod's and Mr. LaBrecque's children is no substitute for a finding by the district court regarding the impact of the fines on the defendants' dependents.

The government next makes the point that restitution was not ordered in this case, arguing that the district court was therefore not required to consider whether

13

the fines would interfere with the defendants' ability to pay restitution. *Answering Brief*, p. 58. However, as Mr. Harrod and Mr. LaBrecque pointed out in their Opening Brief, each did owe a "restitution fine" as part of the sentences in the state criminal cases. *Opening Brief*, pp. 8-9. The district court was required to consider both fines the defendants were required to make for "similar" offenses and "restitution or reparation that the defendant has made or is obligated to make." U.S.S.G. § 5E1.2(d)(4), (d)(6). The court's failure to consider the restitution fines the defendants were ordered to make in the California cases was a clear error.

The government next argues that the district court could have imposed the fines to cover the expected costs of incarcerating Mr. Harrod and Mr. LaBrecque. *Answering Brief*, pp. 58-59. This argument ignores the fact that whatever basis the court could have given for imposition of the fines, it did not indicate that they were based on consideration of the costs of incarcerating Mr. Harrod and Mr. LaBrecque. Indeed, justifying Mr. Harrod's fine on this basis would have been irrational because the fine is paid to the federal government, but Mr. Harrod is serving a life term of imprisonment in the California prison system. Given the lack of a record regarding the cost of imprisoning Mr. Harrod and Mr. LaBrecque and the court's failure to identify this a reason for imposing the fines, the district courts imposition of the fines cannot be upheld based on a complete fiction that this was the reason for the fines.

The government argues that the district court may have found that Mr. Harrod and Mr. LaBrecque can pay the fines with future earnings. *Answering Brief*, pp. 60-62. However, the government does not address the fact that there were no findings as to either Mr. Harrod's or Mr. LaBrecque's ability to earn money while they spent the remainder of their lives incarcerated. The record was

14

void of any evidence as to whether Mr. Harrod would be eligible to work in state prison, the likelihood of his getting a paid position in a state prison, and what his wages, if he was able to get a job in state prison, were likely to be. There were also no findings about Mr. LaBrecque's ability to earn money while serving a life term in federal prison. According to the Federal Bureau of Prisons website, only 16% percent of federal inmates who are eligible to work are able to get jobs in Federal Prison Industries factories that pay 23 ¢ to $1.15 per hour.[3] The remaining federal prison inmates work in jobs that pay just 12 ¢ to 40 ¢ per hour. In short, there is no evidence from which to infer that Mr. Harrod and Mr. LaBrecque had any real ability to pay the $25,000 fine imposed by the Court.

The government's final argument again counters an argument the defendants never made: that a lengthy sentence in and of itself precludes imposition of a fine. The government cites five cases in which defendants serving long terms were ordered to pay a fine, but in each of these cases the district court had a basis for finding an ability to pay the fine. *See United States v. Yeje-Cabrera*, 430 F.3d 1, 19-20 (1st Cir. 2005) (defendant in drug-trafficking conspiracy case who district court found might come into ill-gotten gains from drug-trafficking business); *United States v. Tocco*, 135 F.3d 116, 122-23 (2d Cir. 1998) (defendant who owned the retail building to which he set fire for pecuniary gain); *United States v. Bauer*, 129 F.3d 962, 968-69 (7th Cir. 1997) (PSR contained specific findings as to defendant's financial gain from past offenses and other relevant factors in recommending fine); *United States v. Seale*, 20 F.3d 1279, 1282 (3d Cir. 1994) (case in which defendants kidnaped high profile business executive and "it is a near certainty that the literary and other media rights to the story of a crime are

---

[3] *See* http://www.bop.gov/inmate_programs/work_prgms.jsp.

marketable"); *United States v. Hyppolite*, 65 F.3d 1151 (4th Cir.1995) (defendant involved in cocaine trafficking business). These cases only underscore the principle that the district court cannot impose a substantial fine without some factual basis for a finding that the defendant can pay a fine. In the case of Mr. Harrod and Mr. LaBrecque, the district court imposed the fines despite numerous facts that, in light of the statutory and advisory Guideline factors, indicated fines were improper.

## VI. Conclusion

For these reasons and those in the Joint Opening Brief, the Court must vacate Mr. Harrod's conviction on count two and Mr. LaBrecque's convictions on counts one and three of the Superseding Indictment and remand for entry of a judgment of acquittal on those counts. The government also concedes that both defendants must be re-sentenced on counts one and seven due to an Ex Post Facto Clause violation. Finally, the Court must also remand for resentencing with instructions that the district court strike the $25,000 fine from the sentences of both Mr. Harrod and Mr. LaBrecque.

Dated: December 15, 2010      Respectfully submitted,

/s/ John Balazs
JOHN BALAZS
Attorney for Defendant-Appellant
ALLAN HARROD

DANIEL J. BRODERICK
Federal Defender

Dated: December 15, 2010

/s/ Carolyn M. Wiggin
CAROLYN M. WIGGIN
Assistant Federal Defender
Attorney for Defendant-Appellant
MICHAEL LABRECQUE

Nos. 09-10172 and 09-10179

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. Cr. 2:03-cr-00384-WBS |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF COMPLIANCE |
| | ) | |
| ALLEN HARROD, and | ) | |
| MICHAEL LABRECQUE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Defendants-Appellants certify that this brief is proportionately spaced, has a
Times New Roman typeface of 14 points,  and contains 5,090 words.

Dated: December 15, 2010

Respectfully submitted,

/s/ John Balazs
JOHN BALAZS

Nos. 09-10172 and 09-10179

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. Cr. 2:03-cr-00384-WBS |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| ALLEN HARROD, and | ) | |
| MICHAEL LABRECQUE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

      I hereby certify that on December 15, 2010,  I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

      I  certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

      Dated: 12/15/2010

/s/ John Balazs
JOHN BALAZS